UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DORCHESTER FINANCIAL HOLDINGS         :
CORPORATION f/k/a DORCHESTER
FINANCIAL SECURITIES, INC.,                    :

                Plaintiff,             :

       -against-                          :          **MEMORANDUM AND ORDER**

BANCO BRJ, S.A.,                               :          11-CV-1529 (KMW) (KNF)

            Defendant.          :
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

       Before the Court is a motion by the defendant, Banco BRJ, S.A. ("BRJ"), for an order:
(1) "disqualifying TJ Morrow ["Morrow"] as counsel for [the plaintiff] because he is the only
available witness for Plaintiff and has unique personal knowledge of the transaction at issue in
this litigation"; (2) "requiring that Plaintiff post security in the amount of at least $52,360 for
BRJ's costs and $590,000 for attorneys' fees"; and (3) "any such other and further relief as the
Court deems just and proper." The plaintiff opposes the motion.

***Defendant's Contentions***

       The defendant contends that the plaintiff is a Florida corporation organized in September
2001, at Morrow's suggestion, for the sole purpose of becoming the alleged beneficiary of a
multi-million dollar letter of credit from the defendant, a Brazilian bank, as an investment
vehicle. In September 2001, Stanley Ford ("Ford"), who was president of Dorchester Financial
Securities, Inc., informed Morrow that he knew of a company in England, Africa Capital
Partners ("ACP"), that for $500,000, paid in advance, would cause a bank to make the plaintiff
the beneficiary of an irrevocable and freely-transferable $100 million letter of credit. ACP

allegedly introduced Morrow and Ford, telephonically, to Luiz Alcazar ("Alcazar") and "Mr. De Queiroz," who claimed to be officers of the defendant. However, the defendant asserts, it never employed Alcazar and the real de Queiroz brothers averred – and produced bank records in support of their averments – that they and the defendant never had any dealings with ACP or the plaintiff. Morrow allegedly negotiated the October 3, 2011 agreement among the plaintiff, ACP and the defendant for issuance of the $100 million letter of credit. Morrow testified at his deposition that, despite warnings from Robert Cox ("Cox"), a non-party who was affiliated with an entity known as Strategic Trading, about BRJ's ability to fund the letter of credit, he and Ford instructed Cox to wire ACP the requested $500,000. Alcazar is alleged to have sent Morrow a facsimile copy of the Society for Worldwide Interbank Financial Telecommunication ("SWIFT") message that he sent, supposedly, to Chase bank to verify that the hard copy of the letter of credit was at the bank in Brazil. Alcazar is also  alleged to have sent to Morrow a facsimile copy of the letter of credit, which was for $250 million, not $100 million. Morrow testified that, in October 2001, he visited Chase bank at One Manhattan Plaza, in New York, New York, to meet with a banker, who "handed him a copy of the output of the SWIFT message at Chase's end in New York." Morrow stated that he received a document, via facsimile from Alcazar, in which the defendant refused to perform on the letter of credit unless the plaintiff paid an additional $250,000 to the defendant. According to Morrow, he and Cox convinced Alcazar to bargain down the additional payment to $100,000. Morrow testified that the defendant refused to honor demands repeatedly, in late 2001 and early 2002, under the $250 million letter of credit. It is alleged that, in July 2002, Alcazar notified Ford and Morrow that the defendant cancelled the letter of credit. Morrow and Ford sought to complain to ACP, but ACP stopped responding to telephone calls, facsimile transmissions or e-mail communications from them.

Morrow instructed Cox to go to the London address on ACP's letterhead to speak with its representative in person.  However, Morrow testified that Cox reported back that no evidence was found of ACP having been at that location.

The defendant contends that the only witnesses with personal knowledge of the events related to the alleged transaction at issue in this action are Morrow, Cox and Ford.  However, the plaintiff asserted in its discovery-related correspondence that neither Ford nor Cox is available to appear for deposition, and Morrow is the only available witness.  Moreover, the plaintiff provided Ford's last known address, which an investigation showed did not exist.  The plaintiff then revised its initial disclosure to the defendant by providing a different address for Ford, which, it was discovered, has been a homeless shelter since 1989.  The plaintiff also agreed in the case management plan to produce Cox for deposition in the United Kingdom, before May 23, 2014.  However, the plaintiff stated in an April 18, 2014 letter that it would produce Cox by telephone and would advise about the date, since the plaintiff had no control over Cox. Subsequently, Cox sent an e-mail message to the defendant, advising that, due to unspecified circumstances, he could only help via a written deposition.  Morrow testified that he does not know the whereabouts of ACP.

The defendant contends that disqualification is necessary because Morrow misrepresented to the court, during an April 7, 2014 conference, the availability of other witnesses and his intent to withdraw as plaintiff's counsel in this action.  At his April 16, 2014 deposition, Morrow stated that he would withdraw as the plaintiff's counsel.  However, on April 24, 2014, Morrow stated that he was not required to withdraw from the action, and that Theodore M. Cummings ("Cummings"), as attorney of record, will continue to sign the court filings until further notice.  On April 28, 2014, Morrow wrote a letter to the defendant, stating that, as of that

3

day, he is the plaintiff's attorney of record and Cummings will act as of counsel to Morrow's office.

The defendant contends that, since Morrow served as the plaintiff's counsel during the relevant time, he has personal knowledge of the communications and negotiations that took place among the plaintiff, ACP and the individuals alleging to represent BRJ. Morrow testified that he was present during the telephone call with Ford, Alcazar and de Queiroz, and that he and Ford instructed Cox to wire ACP the requested $500,000. Morrow is also the person who allegedly received copies of the SWIFT message and the letter of credit from the defendant and to whom a copy of the SWIFT message was handed, when he visited Chase bank in New York. The defendant maintains that no doubt exists that Morrow ought to testify on the plaintiff's behalf, which requires his disqualification as counsel.

The defendant is concerned that the plaintiff has no assets and the defendant will not be able to recover its costs should it prevail in this action. Morrow made clear in his testimony that the plaintiff is merely a shell, a corporation formed for the special purpose of conducting the alleged letter of credit transaction. He testified that the plaintiff has no assets other than this litigation and was never capitalized. Moreover, the merits of the plaintiff's claims are questionable because the defendant has offered evidence that: (a) the purported SWIFT message and BRJ documents proffered by the plaintiff are forgeries; (b) the defendant never employed Luis Alcazar and never had any dealings with ACP or Dorchester; and (c) the entire premise of the action, that the plaintiff could obtain a $100 million or $250 million letter of credit for a $500,000 advance fee paid to ACP "wreaks of fraud." In addition, Morrow disposed of his computer on which the vast majority of the plaintiff's files and data were stored, rendering the documents upon which the plaintiff relies inadmissible for lack of authenticity, violation of the

best evidence rule and under the rules respecting hearsay.  Furthermore, the defendant has already performed and will continue to perform significant discovery activities to defend itself in this action, and has incurred significant costs.  The defendant expects to incur significant translation costs in preparing documents as well as costs for interpreter services.  The defendant asserts that the plaintiff has frustrated the discovery process already, by misleading the court at the Rule 16(b) conference, refusing to answer relevant questions, providing bogus addresses for witnesses, refusing to produce witnesses for deposition and destroying, intentionally, relevant evidence.

The defendant contends that, if it prevails in this action, it is entitled to recover taxable costs, including the costs of videotaped depositions.  The defendant expended $4,360 for Morrow's videotaped deposition.  Using an estimate of $4,000 per deposition, the defendant projects that it is likely to incur an additional $16,000 for depositions.  BRJ incurred over $2,000 in photocopying fees, fees for obtaining certified copies of documents filed with the court in a prior action and "in litigations in California and Florida that involved similar frauds" and obtaining certified copies of Dorchester's corporate filings from the Florida Department of State. Moreover, the fee incurred for translating, from Portuguese into English, 59 pages of documents was $2,307.65; which is approximately $39 per page.  BRJ produced 969 pages of documents, of which 733 are in Portuguese.  Using the estimated $39 per page rate, translating each document BRJ plans to use at trial will likely cost over $28,500.  Moreover, if this case goes to trial, the defendant plans on calling Luiz Augusto de Queiroz, and possibly other BRJ witnesses to testify, which would require the defendant to pay interpreting service fees.  Based on a $388 per day, court-appointed interpreter rate, the defendant estimates it will incur $30,000 in interpreting service fees.  Thus, BRJ calculates its past and estimated future costs to be $52,360.  The

defendant contends that its estimated attorneys' fees are $590,000. It has already incurred $289,886.50 in attorneys' fees, and it is likely to incur an additional $300,000 in attorneys' fees, based on a rate of $60,000 per month, through September 2014.

***Plaintiff's Contentions***

The plaintiff contends that the defendant's motion is

moot because Luiz Augusto de Queiroz and Luiz Claudio de Queiroz committed fraud-on-the-court in August 2011 when they lied and misrepresented alleged facts in declarations under penalty of perjury causing the Court to rely on those lies and misrepresentations calling them 'overwhelming evidence' to dismiss this action on January 24, 2014.

According to the plaintiff, the defendant's motion is moot because the defendant and its attorneys "committed fraud-on-the-court." The plaintiff contends that "[a]ccording to [the October 13, 2003 letter to the court in the previous action by] Mr. [Jonathan I.] Blackman," SWIFT's counsel in the plaintiffs' previous action, the defendant "did issue a letter of credit to Dorchester and advised Chase Manhattan. We know this because Sheila Baker ["Baker"] acknowledges Mr. Blackman's letter with clear references that are made to the text of the letter of credit," in her June 5, 2014 declaration. The plaintiff maintains that the defendant "seeks disqualification and costs fr [sic] no valid reason other than to obstruct the action while it remains derelict in its discovery obligations and continually lies to the Court." The plaintiff asserts that "Banco's request to bring this particular motion was denied." It maintains that the defendant "moves the Court for reconsideration of docket 71 though it is not specifically stated," and the defendant "fails to set forth any basis for reconsideration." According to the plaintiff, disqualification of its counsel is not required because "no reason for disqualification has been shown," and "a party's right to be represented by counsel of their [sic] choosing is a valued right which should not be abridged absent a clear showing that disqualification is necessary."

Moreover, a bond is not required and "the only costs that are taxable are transcripts entered into evidence at a trial, witness fees and expenses."

In support of its opposition, the plaintiff submitted a declaration, erroneously styled as an affirmation, of its counsel, TJ Morrow ("Morrow"). Morrow states, inter alia:

> TJ Morrow searched his computer archives to ascertain any and all documents that were relevant to proving Dorchester's claim and assist him in drafting the appeal [in the prior action]. The documents that have been ascertained from the computer hard drive have been presented to the defendant in hard copy. It crashed about 30 to 40 days after Dorchester filed its Notice of Appeal [in the previous action], or between March 20, 2012 and March 25, 2012. Everything on the computer's hard drive was lost except for the documents that have been presented to Defendant to comply with its document production demands. After Mr. Morrow's computer hard drive crashed he disposed of it using proper sanitation methods that were in place at the time in Raleigh, NC. The documents Dorchester has presented in this action were those recovered from original and authentic documentation prior to the computer hard drive crash before March 20, 2012. However the failure affects Dorchester's file from the commencement of the transaction in 2001 to the present or 2014. Mr. Morrow's personal computer hard drive crashed. Mr. Morrow is the only fact witness [to this event].

Morrow also states that "[t]he record shows that TJ Morrow is Dorchester's attorney and would not act as a witness."

***Defendant's Reply***

The defendant contends that the plaintiff's reliance on Baker's declaration is misplaced because she had no involvement in the facts of this case, other than "to hand to Morrow a copy of a SWIFT message allegedly from BRJ that she claims to have acquired from Chase's Communications Department." According to the defendant, even if Cox is compelled to testify live at a deposition, or be a witness, Morrow still must be disqualified because he is the only witness with personal knowledge of the relevant facts as required under Rule 602 of the Federal Rules of Evidence. Only Morrow and Ford are alleged to have communicated with ACP, the applicant for the letter of credit, and with persons purporting to represent the defendant.

Moreover, the only surviving documents from the alleged hard-drive crash of Morrow's computer show him to be the only person who, in September and October 2001, interacted with ACP and the persons allegedly representing the defendant. To rebut the allegations of forgeries, Morrow will need to testify about the defendant's alleged consent to jurisdiction. Morrow is also the only fact witness with personal knowledge of the circumstances surrounding the scope of his collection of the plaintiffs's documents prior to the alleged hard drive crash and subsequent disposal of his computer. The defendant asserts that the plaintiff's alleged choice of Morrow as its attorney has not been supported by evidence of any client representative. It asserts that any prejudice to the plaintiff from disqualification is avoided by the fact that it has other counsel, Cummings.

The defendant contends that the plaintiff should be required to post $52,360, as security for costs and $590,000, as security for attorney's fees, because it has no visible means to pay costs under Rule 54 of the Federal Rules of Civil Procedure. At a minimum, the plaintiff should be required to post an original bond for costs and fees through the summary judgment phase of the litigation and additional security if the case continues after the summary judgment phase. Additionally, Local Civil Rule 54.1(c) permits the posting of security for attorney's fees, in a circumstance where such fees are likely to be awarded as a sanction against a party or its counsel. The defendant maintains that such a circumstance exists in this case.

### *Legal Standard*

> A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless: (1) the testimony relates solely to an uncontested issue; (2) the testimony relates solely to the nature and value of legal services rendered in the matter; (3) disqualification of the lawyer would work substantial hardship on the client; (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will

be offered in opposition to the testimony;  or  (5)  the testimony is authorized by the tribunal.

New York Rules of Professional Conduct, Rule 3.7(a).

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" Hempstead Video, Inc. v. Inc. Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (quoting Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)).  The New York Rules of Professional Conduct are not binding authority, but "provide general guidance" for determining whether a party's attorney should be disqualified.  Id.  "Because the courts must guard against tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions" based on the witness-advocate rule.  Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989) (internal citation omitted). The Second Circuit Court of Appeals summarized the policies behind the witness-advocate rule as follows:

> We have identified four risks that Rule 3.7(a) is designed to alleviate: (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.  These concerns matter because, if they materialize, they could undermine the integrity of the judicial process.
>
> Murray v. Metro. Life Ins. Co., 583 F.3d 173, 178 (2d Cir 2009) (internal citation omitted).

"The Court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate."  Local Civil Rule 54.2.  Security costs under Local Civil Rule 54.2 may include attorney's fees to which a party may be entitled by statute, such as 28 U.S.C. § 1927, or a

provision of the Federal Rules of Civil Procedure.  See, Bressler v. Liebman, No. 96 Civ. 9310, 1997 WL 466553, at *6-8 (S.D.N.Y. Aug. 14, 1997).  When determining a motion for security, courts consider various factors, including "the financial condition and ability to pay of the party at issue; whether that party is a non-resident or foreign corporation; the merits of the underlying claims; the extent and scope of discovery; the legal costs expected to be incurred; and compliance with past court orders."  Selletti v. Carey, 173 F.R.D. 96, 100-01 (S.D.N.Y. 1997).  "Cases requiring a security bond generally involve plaintiffs with no reachable assets."  Beverly Hills Design Studio (N.Y.) v. Morris, 126 F.R.D. 33, 36 (S.D.N.Y. 1989).

***Application of Legal Standard***

In its motion to disqualify, the defendant relies on New York Disciplinary Rule 5-102(c) of the Code of Professional Responsibility that was superseded by Rule 3.7 of the New York Rules of Professional Conduct.  Rule 5-102(c)'s test, whether the attorney "ought to be called" as a witness, has been superseded.  The only test under Rule 3.7 is whether an attorney is "likely to be a witness on a significant issue of fact."  New York Rules of Professional Conduct, Rule 3.7(a).

Whether Morrow Is Likely to Be a Witness on a Significant Issue of Fact

It is undisputed that Morrow is a fact witness who was involved in the underlying transaction, as he represented to the assigned district judge during the April 7, 2014 conference, and in his June 6, 2014 declaration in opposition to the instant motion.  Given that Morrow does not know the whereabouts of Ford or any person associated with ACP, and in light of Cox's alleged unavailability for oral examination, Morrow appears to be the only witness with knowledge of the facts underlying the instant action.  Additionally, Morrow is also the sole fact witness concerning the only documents of the plaintiff allegedly in existence that are germane to

10

this action.  According to Morrow, the plaintiff's documents were stored on his computer, before it crashed and was disposed of by him.

   As Morrow appears to be the only fact witness concerning the allegations in the complaint and the relevant documents, it is not clear that the plaintiff's case can proceed without his testimony.  Morrow's statement that he "would not act as a witness" is irrelevant because the test is not whether he "ought to be called" as a witness on behalf of his client; the test is whether he is likely to be a witness on a significant issue of fact, regardless of which party intends to call him as a witness.  An attorney who is likely to be a witness on a significant issue of fact cannot perform, simultaneously, an advocate's role at a proceeding because performing those two roles: witness and advocate creates a conflict.  That conflict cannot be resolved by the attorney's decision not to testify, since that would place the attorney's interest in serving as an advocate above the client's interest in presenting helpful testimony.  In the circumstance of this case, the Court finds that Morrow is likely to be a witness on a significant issue of fact in this action, and cannot serve a dual role as witness and advocate.

   Whether Any Exceptions Apply

   Morrow's testimony on a significant issue of fact is not related solely to an uncontested issue because the defendant asserts that the alleged transaction at issue in this case is based on forgery and disputes the allegations in the complaint.  The testimony does not relate: (a) to the nature and value of legal services rendered in the matter; or (b) solely to a matter of formality.  Furthermore, no substantial hardship would attend the plaintiff from Morrow's disqualification, because Cummins "serves as co-counsel to Dorchester," as Morrow represented to the court during the April 7, 2014 conference, and the defendant does not seek Cummins's disqualification based on Rule 3.7(b) of the New York Rules of Professional Conduct.  The

Court finds that no exceptions to disqualification under Rule 3.7(a) apply based on the Court's finding that Morrow is likely to be a witness on a significant issue of fact.  The Court finds that Morrow's disqualification is warranted because he is likely to be a witness on a significant issue and no exception applies to his disqualification.

<u>Whether Posting Security Is Warranted</u>

Morrow testified that the plaintiff has no assets.  A serious risk is apparent that the plaintiff would not be able to pay reasonable costs to the defendant, if the defendant prevails in this action.  Although this action appears to have been brought pursuant to the court's diversity jurisdiction, no allegation in the second amended complaint or evidence in the record exists to demonstrate whether the plaintiff is a non-resident or foreign corporation.  The plaintiff's claims appear to be of dubious merit, in part, owing to record evidence, including declarations by Luiz Augusto de Queiroz (Docket Entry Nos. 13 and 22) and Luiz Claudio de Queiroz (Docket Entry No. 23), suggesting that the transaction underlying the instant action is fraudulent.  Although the plaintiff contends that these declarations are "lies and misrepresentations" and that it has evidence showing that the defendant and its attorneys "committed fraud-on-the-court," namely: (i) the October 13, 2003 letter to the court by SWIFT's attorney in the previous action; and (ii)  Baker's June 5, 2014 declaration, the letter by SWIFT's attorney and Baker's do not support the plaintiff's contentions.  The October 13, 2003 letter to the court, which had not been filed and does not form part of the record in the previous case, does not establish, as the plaintiff contends, that the defendant sent the SWIFT message at issue in this action.  Baker's declaration contains hearsay and does not show anything except that she "handed" a copy of a certain unexplained and unidentified document to Morrow.  If the defendant's evidence is ultimately credited by the jury, the defendant would prevail and would be entitled to recover its costs.  In

12

light of the fact that the whereabouts of witnesses with knowledge about the underlying

transaction are unknown to the plaintiff, and given the extremely limited amount of documents

disclosed by the plaintiff due to the alleged loss and destruction of Morrow's computer, which

contained the plaintiff's relevant documents, discovery in this action has been frustrated,

seriously impeding the defendant's ability to defend against the claims and, possibly, affecting

the plaintiff's ability to prosecute the action.  Moreover, according to the defendant, the conduct

of the plaintiff and its counsel may expose them to sanctions.  The defendant's costs, including

depositions, interpreting costs and  attorney's fees, appear to be significant.  Under the

circumstances of this case, the Court finds that requiring the plaintiff to post security is

warranted.  The Court finds that posting security in the amount of $642,360, the costs incurred

by the defendant to the present and the estimated future costs, including attorneys' fees, is

reasonable.

***Conclusion***

      For the foregoing reasons, the defendant's motion, Docket Entry No. 82, is granted.  It is

ORDERED that:

    (1)    TJ Morrow is disqualified as counsel to the plaintiff as of the date of this order;

           and

    (2)    on or before July 25, 2014, the plaintiff post $642,360 as security in this action.

Dated: New York, New York
       July 18, 2014                        SO ORDERED:

                                          Kevin Nathaniel Fox
                                          KEVIN NATHANIEL FOX
                                          UNITED STATES MAGISTRATE JUDGE